## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| PAULA KIEKISZ, Administrator of Brenden Kiekisz Estate | ) | Case No. 1:21-cv-00264 |
| | ) | |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Thomas M. Parker |
| v. | ) | |
| | ) | |
| CUYAHOGA COUNTY BOARD OF COMMISSIONERS, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Before the Court are two motions for judgment on the pleadings.  Defendant Kenneth Mills, in his individual capacity, adopted his previous motion for judgment on the pleadings and submitted a supplemental memorandum of law in support. (ECF No. 52; ECF No. 52-1.)  Defendants Mazo Beawin-Monah, Grace Lagreca, Aisha Parnell, Thomas Tallman, Jessica Trovato, and Chanda Zitiello also move for partial judgment on the pleadings.  (ECF No. 53.)  For the reasons explained below, the Court **GRANTS** the motions.

## STATEMENT OF FACTS

On a motion for judgment on the pleadings, the Court takes the following allegations in the first amended complaint as true and construes them in Plaintiff's favor.

Brenden Kiekisz died on December 30, 2018 at MetroHealth Hospital, at age 27, while in custody of the Cuyahoga County Corrections Center.  (ECF No. 47, ¶ 122,

PageID #661.) He was transferred to the hospital just three days earlier after a Corrections Officer looked into his cell around 11:00 p.m. on December 27, 2018 and noticed Mr. Kiekisz had hanged himself by tying a blanket to his bed. (*Id.*, ¶ 119, PageID #660.)

Mr. Kiekisz had long struggled with his mental health. The relevant events leading to his death began in September 2018, when Mr. Kiekisz checked himself into a mental health facility after having suicidal thoughts. (*Id.*, ¶ 21, PageID #524.) While being treated, he missed one appointment with his probation officer, and a warrant was issued for his arrest. (*Id.*, ¶ 22.) He was on probation for "crimes associated with a history of mental health issues and self-medicating with drugs." (*Id.*, ¶ 22, n.1.) Mr. Kiekisz was not made aware of the warrant even though he reported to his probation officer after missing the single appointment. (*Id.*, ¶ 22.)

When he eventually learned about the warrant, he became distraught and overdosed, which resulted in his hospitalization for over two weeks. (*Id.*, ¶¶ 23–24, PageID #524–25.) Upon his discharge, he recommitted to living drug free, a decision motivated by his girlfriend's new pregnancy. (*Id.*, ¶¶ 24–25, PageID #525.) Sadly, his girlfriend suffered a miscarriage on December 23, 2018. (*Id.*, ¶ 26.) During this difficult time, the couple had an argument two days later that ended with Mr. Kiekisz locked outside of his home without shoes or a coat. (*Id.*, ¶ 27.) He called his father, who drove to him, accompanied by his mother and brother. (*Id.*, ¶ 28.) Mr. Kiekisz's family found him distressed. (*Id.* ¶ 29.) He declined to go home with them, so they wished him a Merry Christmas and departed. (*Id.* ¶ 32, PageID #526.)

Later that day, Cleveland Police arrested Mr. Kiekisz for panhandling. (*Id.*, ¶ 33.) Panhandling was not an arrestable offense at the time, but Mr. Kiekisz was taken to the Cuyahoga County jail anyway. (*Id.*) While there, his outstanding warrant appeared on his record, and he was booked into the jail. (*Id.*, ¶ 34.) Corrections Officer Rob Marsh handled the intake. (*Id.*, ¶ 35, PageID #527.) During intake Mr. Kiekisz informed Officer Marsh that he did not currently have suicidal thoughts, but that he suffers from depression and bipolar disorder, was currently taking prescription medication for mental health, and tried to kill himself two days earlier. (*Id.*, ¶¶ 40, 41, 42, 44, PageID #527–28.) Officer Marsh noticed that Mr. Kiekisz seemed angry, the letters "F.U." appeared to have been carved into his arm recently, and his pants were stained with dried blood. (*Id.*, ¶¶ 43 & 51, PageID #527 & 529.)

Officer Marsh called Corporal Daniel Halloran and informed him of Mr. Kiekisz's recent suicide attempt and the other information discovered during intake. (*Id.*, ¶ 57, PageID #530.) The two offer competing accounts of their exchange. (*Id.*, ¶ 63, PageID #532.) Officer March claims Corporal Halloran said, "Get him dressed, and we'll have him seen." (*Id.*, ¶ 58, PageID #531.) Corporal Halloran claims he offered to come down to conduct a mental health evaluation for Mr. Kiekisz, but that Officer Marsh told him to hold off and that Officer Marsh would call him when they were ready. (*Id.*, ¶ 64, PageID #532.) According to Corporal Halloran, Officer Marsh never called. (*Id.*)

3

The Corporal also claimed he told Nurse Grace Lagreca that a new inmate recently attempted suicide (*id.*, ¶ 67, PageID #533), but the employee roster indicates that Nurse Lagreca was not working that evening (*id.*, ¶ 69). A video shows Corporal Halloran speaking with Nurse Jessica Trovato that Christmas evening, but there is no audio available. (*Id.*, ¶ 70.) The Corporal later stated in an investigative interview that he alerted Nurse Trovato to an inmate who recently attempted suicide and that Nurse Trovato told him she knew about him and stated he would be getting an assessment. (*Id.*, ¶ 71, PageID #534.) Nurse Trovato denies that Corporal Halloran mentioned the situation to her (*id.*, ¶¶ 73 & 80, PageID #534 & 537), but also stated that she may not have conducted a medical assessment of Mr. Kiekisz because of computer issues and a heavy workload (*id.*, ¶ 84, PageID #538).

Whatever the case, Mr. Kiekisz was sent to the jail's general population without a mental health referral or evaluation. (*Id.* ¶ 60, PageID #531.) He received a floor card, which is a one-page form that states where the inmate is housed, his status or classification, and other information to make sure inmates with mental health needs are placed in a particular area of the jail. (*Id.*, ¶ 59.) Mr. Kiekisz's floor card placed him in the general jail population. (*Id.*, ¶ 60.) It also displayed a large, red stamp that stated "MEDICAL" on the outside cover. (*Id.*, ¶ 88, PageID #539.) The stamp usually indicates that the inmate has received a medical assessment, although Mr. Kiekisz never did. (*Id.*, ¶¶ 88 & 94, PageID #593 & 541.) It is unclear who incorrectly stamped his floor card. (*Id.*, ¶¶ 89–90, PageID #540.) It may have

been Nurse Travato, Nurse Murphy, Nurse Beawin-Monah, or an unauthorized corrections officer.  (*Id.*, ¶¶ 89–90, PageID #540.)

Between his arrest and intake on Christmas Day and a court appearance on December 27, 2018, Mr. Kiekisz was denied his prescription medication while detained.  (*Id.*, ¶ 113, PageID #545.)  At his court appearance for his alleged probation violation, Mr. Kiekisz explained that he missed the appointment because he was suicidal and checked himself into a medical facility and that he later overdosed and was hospitalized after learning of the warrant issued for his arrest.  (*Id.*, ¶ 115.)  He also explained that he wished to return to the mental health facility and that he felt "really messed up" without his medications and mental health assistance.  (*Id.*, ¶ 117, PageID #546.)  After appearing in court, Mr. Kiekisz was returned to his jail cell in the general population and given a blanket.  (*Id.*, ¶ 118, PageID #547.)  Officer Walsh found Mr. Kiekisz in his cell later that evening, the blanket tied to himself and the handle of the bunk bed.  (*Id.*, ¶ 119.)

Plaintiff pleads several customs, policies, and practices of Defendants' that led to Mr. Kiekisz's death.  In sum, she alleges that because Mr. Kiekisz recently attempted suicide before his arrest, he should have been given a mental health assessment, placed in the mental health area of the jail, and received a suicide-prevention blanket, but was not.  (*Id.*, ¶ 86, PageID #538.)

## STATEMENT OF THE CASE

Plaintiff Paula Kiekisz, Brenden Kiekisz's mother and the administrator of his estate, filed the initial complaint on his behalf in State court on December 21, 2020.  (ECF No. 1-1.)  Cuyahoga County and the other Defendants removed the case to

federal court on February 1, 2021.  (ECF No. 1.)  Defendant Eric Ivey moved to dismiss the complaint for failure to state a claim (ECF No. 7), and Defendant Kenneth Mills moved for judgment on the pleadings (ECF No. 19).  Plaintiff did not respond to either motion, but requested leave to file an amended complaint.  In addition, Plaintiff and Mr. Ivey entered into a joint stipulated agreement dismissing without prejudice Plaintiff's claims against Mr. Ivey in his individual capacity, thereby rendering Mr. Ivey's motion moot.  (ECF No. 17.)  The Court granted in part and denied in part Plaintiff's motion for leave to amend the complaint.  (ECF No. 46.)  Plaintiff filed a first amended complaint in compliance with the Court's order.  (ECF No. 47.)

Based on the allegations, Plaintiff raises fourteen causes of action in the first amended complaint:  (1) deliberate indifferent to serious medical needs in violation of the Eighth and Fourteenth Amendments under 42 U.S.C. § 1983; (2) supervisory liability under 42 U.S.C. § 1983; (3) willful, wanton, reckless, malicious, and bad faith conduct; (4) intentional infliction of emotional distress; (5) negligent hiring, training, retention, discipline, and supervision; (6) failure to intervene; (7) wrongful death; (8) survivorship; (9) violations of due process under the Fifth and Fourteenth Amendments; (10) violations of the Americans with Disabilities Act and the Rehabilitation Act; (11) medical malpractice; (12) *Monell* violations; (13) civil liability for criminal acts under Section 2307.60(A)(1) of the Ohio Revised Code; and (14) vicarious liability or respondeat superior.

6

Defendants answered the first amended complaint.  (ECF No. 48; ECF No. 49; ECF No. 51.)  In addition, Mr. Mills, in his individual capacity, adopted his previous motion for judgment on the pleadings and submitted a supplemental memorandum of law in support.  (ECF No. 52; ECF No. 52-1.)  Defendants Mazo Beawin-Monah, Grace Lagreca, Aisha Parnell, Thomas Tallman, Jessica Trovato, and Chanda Zitiello also move for judgment on the pleadings.  (ECF No. 53.)  Plaintiff did not respond to either motion.

## ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)."  *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).  "The only difference between Rule 12(c) and Rule 12(b)(6)" is timing.  *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003).

To survive dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted.  *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)).  To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).  In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not.  *Iqbal*, 556 U.S. at 628. The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]"  *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## I.  Mr. Mills

Plaintiff sues Mr. Mills in his individual and official capacities.  (ECF No. 47, ¶ 10, PageID #520.)  Plaintiff raises Counts 1–9, 11, and 13 against Mr. Mills.

### I.A.  Individual Capacity Claims

Mr. Mills moves for judgment on the pleadings on all claims brought against him in his individual capacity.  Plaintiff alleges Mr. Mills "was the Former Director" of the County jail and at "all times relevant to this case," was responsible for the jail's operations, policies, procedures, practices, customs, and training and supervision of its agents, servants, and employees, and "had final policy making authority."  (ECF No. 47, ¶ 10, PageID #520.)

8

Mr. Mills admits that he "worked for a period of time as the Director of Regional Corrections for Cuyahoga County," but clarifies that he held that position "from 2014 until November 14, 2018 when he voluntarily resigned from employment with Cuyahoga County . . . ." (ECF No. 51, ¶ 10, PageID #712.) The Complaint does not contradict that timeline. Based on his resignation in November 2018, Mr. Mills argues that he cannot be personally liable for the events relevant to Plaintiff's complaint, which occurred between December 25, 2018 and December 30, 2018. (ECF No. 52-1, PageID #739–41.)

Under the law of this Circuit,

the proper inquiry concerning the liability of a City and its employees in both their official and individual capacities under section 1983 for a jail detainee's suicide is: whether the decedent showed a *strong likelihood* that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.

*Perez v. Oakland Cnty.*, 466 F.3d 416, 433 (6th Cir. 2006) (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (emphasis in *Perez*). "'Deliberate indifference' is the reckless disregard of a substantial risk of serious harm; mere negligence or even gross negligence, will not suffice." *McPherson v. Cuyahoga Cnty.*, No. 1:20-cv-00639, 2021 WL 2841582, at *7 (N.D. Ohio July 8, 2021) (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)).

A plaintiff must meet an objective and subjective test to succeed on such a claim. *Trozzi v. Lake Cnty.*, No. 1:20-CV-00684, 2021 WL 2806215, at *4 (N.D. Ohio July 6, 2021). "For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Id.* (quoting *Spears v. Ruth*, 589

9

F.3d 249, 254 (6th Cir. 2009)).  "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.* (quoting *Spears* at 254.)  "A defendant has a sufficiently culpable state of mind if he 'knows of and disregards an excessive risk to inmate health or safety.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  A defendant's individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).  Plaintiff alleges that Mr. Mills is the former jail director (ECF No. 47, ¶ 10, PageID #520), and Mr. Mills' answer does not contradict that allegation (ECF No. 51, ¶ 10, PageID #712).  Construing the allegations in Plaintiff's favor, she cannot as a matter of law satisfy the subjective component where Mr. Mills resigned from his position over one month before Mr. Kiekisz was denied proper medical care as a pretrial detainee.

## I.B.    Civil Liability for Criminal Acts

Further, Mr. Mills argues that Count 14, a claim for civil liability for criminal acts under Section 2307.60 of the Ohio Revised Code is time-barred.  (ECF No. 52-1, PageID #741.)  Section 2307.60 is subject to the one-year statute of limitations found in Section 2305.11(A).  *Brack v. Budish*, No. 1:19-cv-1436, ___ F. Supp. 3d ___, 2021 WL 1960330, at *5 (N.D. Ohio May 17, 2021); *McPherson v. Cuyahoga Cnty.*, No. 1:20-cv-00639, 2021 WL 2841582, at *6 (N.D. Ohio July 8, 2021); *see also Roarty-Nugent v. Cuyahoga Cnty.*, No. 1:20-cv-1025, 2020 WL 5530354, at *6 (N.D. Ohio Sept. 15, 2020).  A cause of action typically accrues when the wrongful act was committed.  *State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Co.*, Cuyahoga

10

County No. 104157, 2017-Ohio-7727, 2017 WL 4177024, ¶ 94 (Ohio Ct. App.) (citations omitted).  But the discovery rule tolls the limitations period to the time when the plaintiff discovers, or reasonably should have discovered, the possible cause of action through the exercise of reasonable diligence.  *Id.* (citations omitted).

A Rule 12 motion "is generally not an appropriate vehicle for dismissing a claim based upon the statute of limitations" unless "the allegations in the complaint affirmatively show that the claim is time-barred[.]"  *Cheatom v. Quicken Loans*, 587 F. App'x 276, 279 (6th Cir. 2014).  Setting aside the discovery rule for the moment, Plaintiff's claim is time-barred under the one-year statute of limitations.  The cause of action accrued on or before Mr. Mills' resignation from employment on November 14, 2018 because he could not have engaged in any criminal activity in his official capacity after that date.  Plaintiff filed her complaint in State court on December 21, 2020, almost two years after the relevant events occurred.  (ECF No. 1-1, PageID #4.) The original complaint did not include a claim under Section 2307.60(A)(1).  Rather, the claim was added to Plaintiff's first amended complaint, filed on August 23, 2021. Applying the one-year statute of limitations, Plaintiff's claim against Mr. Mills is time-barred and would be time-barred even if she had included the claim in the original complaint and even if Mr. Mills had not resigned before December 30, 2018, the date of Mr. Keikisz's death.

To the extent this claim is brought against Mr. Mills in his official capacity, Mr. Mills asserts that the discovery rule does not toll the limitations period on these facts. (ECF No. 52-1, PageID #741.)  Plaintiff bears the burden to plead affirmatively

11

why the statute of limitations should be tolled where, as here, "it is apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equip. Assocs.*, 958 F.2d 742, 744 (6th Cir. 1992).  A plaintiff may not "escape the statute by saying nothing."  *Id.*  Further, where "defendants have highlighted the apparent untimeliness of the complaint, plaintiffs may not simply rely on the bare assertion that they were unaware of the facts underlying their cause of action."  *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008).

Plaintiff has failed to plead sufficiently why the limitations statute should be tolled.  The first amended complaint contains no factual allegations suggesting that Mr. Mills or the other Defendants hid the cause of action from Plaintiff or otherwise prevented her from filing the lawsuit earlier than she did.  Nor are there factual allegations suggesting that Plaintiff was unaware of the underlying conduct and could not have discovered the cause of action through the exercise of reasonable diligence before the one-year limitations period expired.  Accordingly, Count 14 as pled against Mr. Mills is time-barred.

## II.   MetroHealth Medical Personnel

Plaintiff asserts Counts 1, 3–4, 6–9, and 11 against Nurses Grace Lagreca, Mazo Beawin-Monah, Chanda Zitiello, Aisha Parnell; Counts 1, 3–4, 6–9, 11, and 13 against Nurse Trovato; and Counts 1–9, 11, and 13 against Dr. Tallman.  The moving Defendants all argue Counts 1 and 9, the federal claims, should be dismissed against them.  They also argue that all official-capacity claims against them must be dismissed as duplicative of the claims against Cuyahoga County and MetroHealth Hospital and that Count 3 (willful, wanton, reckless, malicious, and bad faith

conduct) must be dismissed because it is not a stand-alone cause of action. Nurses Grace Lagreca, Mazo Beawin-Monah, Chanda Zitiello, Aisha Parnell then argue that the Court does not have jurisdiction over the remaining State law claims against them, Counts 3–4, 6–8, and 11. Alternatively, they argue they are immune from liability under State law.

### II.A. Fifth and Eighth Amendments

Count 9 of the first amended complaint invokes the Fifth Amendment and Count 1 invokes the Eighth Amendment. The moving Defendants argue that the Fifth Amendment does not apply because Defendants are all State officials, not federal, and that the Eighth Amendment does not apply because Mr. Kiekisz was a pretrial detainee, not a prisoner.

The Fifth Amendment, as Defendants argue, only applies to actions of the federal government. *Prosser v. Francoeur*, 85 F. Supp. 2d 736, 738 n.3 (E.D. Mich. 2000) (citing *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997); *Newsom v. Vanderbilt University*, 653 F.2d 1100, 1113 (6th Cir. 1981)); *see also Occupy Nashville v. Haslam*, 769 F.3d 434, 440 n.13 (6th Cir. 2014). The moving Defendants are not federal officials, (ECF No. 47, ¶¶ 13, 14, 16, 18, PageID #521–23) and, therefore, cannot be sued under the Fifth Amendment.

Defendants are also correct about Plaintiff's Eighth Amendment claim. "[B]ecause a pretrial detainee has not yet been convicted, the source of a pretrial detainee's right to be free from excessive force stems from the Fourteenth Amendment rather than the Eighth Amendment." *Leary v. Livingston Cnty.*, 528 F.3d 438, 450 (6th Cir. 2008); *see also Trozzi*, 2021 WL 2806215, at *4 (recognizing

that, where a deliberate indifference claim is brought on behalf of a pre-trial detainee, "the Due Process Clause of the Fourteenth Amendment is the proper starting point") (citations omitted). Accordingly, Plaintiff may not pursue her theory of deliberate indifferent to serious medical needs under the Eighth Amendment.

But the protections of the Fifth and Eighth Amendments are made applicable to the states through the Fourteenth Amendment and Plaintiff also brings Counts 1 and 9 under the Fourteenth Amendment. *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (Fifth Amendment); *Burwell v. City of Lansing*, No. 20-1505, 2021 U.S. App. LEXIS 23074, at *9 (6th Cir. Aug. 4, 2021) (Eighth Amendment) (citations omitted). To the extent not stated otherwise in this Opinion, Plaintiff may pursue claims against these Defendants under the Fourteenth Amendment.

## II.B. Fourteenth Amendment

Counts 1 (deliberate indifference to serious medical needs) and 9 (due process) invoke the Fourteenth Amendment. Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell argue that Plaintiff has failed to state a claim for deliberate indifference to serious medical needs and that Count 1 therefore fails as a matter of law. (ECF No. 53, PageID #754.) The Nurses only make this argument with respect to Count 1 and Dr. Tallman and Nurse Trovato do not join in the argument. (*Id.*)

Unlike the Eighth Amendment, the Fourteenth Amendment protects pretrial detainees from deliberate indifference toward serious medical needs. *Burwell v. City of Lansing*, No. 20-1505, 2021 U.S. App. LEXIS 23074, at *9 (6th Cir. Aug. 4, 2021) (citations omitted). Courts analyze Fourteenth Amendment deliberate indifference

claims under the same rubric as those brought under the Eighth Amendment. *Id.* (citation omitted). That rubric is set out above.

The first amended complaint does not provide any factual allegations to support that Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell acted with deliberate indifference toward Mr. Kiekisz's medical needs. The amended complaint makes clear that Mr. Kiekisz did not receive medical care before being sent to the jail's general population, but it does not allege that these particular Defendants (or any one of them) were aware of Mr. Kiekisz's medical needs. Plaintiff alleges Corporal Halloran thought he informed Nurse Lagreca of Mr. Kiekisz's medical needs, but also alleges that "Nurse Lagreca was not even working that night[.]" (ECF No. 47, ¶¶ 67 & 69, PageID #533.) The allegations against Nurses Beawin-Monah, Zitiello, and Parnell are equally as slim or nonexistent. Therefore, Plaintiff cannot satisfy the subjective prong of the rubric, and Count 1 fails as to Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell.

### II.C. Duplicative Official Capacity Claims

The federal claims raised against Nurses Lagreca, Beawin-Monah, Zitiello, Parnell, and Trovato and Dr. Tallman in their individual and official capacities are also raised against Cuyahoga County and MetroHealth. Defendants argue that because MetroHealth and Cuyahoga County are also named Defendants, that the claims against the Nurses and Dr. Tallman in their official capacities are duplicative and should be dismissed. (ECF No. 53, PageID #755–56.)

"[O]fficial-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent." *McPherson v. Cuyahoga Cnty.*, No.

1:20-cv-00639, 2021 WL 2841582, at *12 (N.D. Ohio July 8, 2021) (quoting *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009) (quoting *Monell*, 436 U.S. at 690 n.55)). Because Plaintiff sued Cuyahoga County and MetroHealth, the official-capacity claims against Nurses Lagreca, Beawin-Monah, Zitiello, Parnell, and Trovato and Dr. Tallman are dismissed.

### II.D.  Qualified Immunity

Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell argue that if Plaintiff adequately pled a viable federal claim against them, they are entitled to qualified immunity.  (ECF No. 53, PageID #756.)  Because the Court has already dismissed Plaintiff's deliberate indifference claim (Count 1), it limits its analysis of qualified immunity to Plaintiff's due-process claim (Count 9).

Qualified immunity protects public officials against lawsuits for civil damages where their conduct does not violate the plaintiff's clearly established constitutional rights.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quotation omitted).  "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right."  *Courtright v. City of BattleCreek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)) (cleaned up).  Plaintiff bears the burden of establishing that qualified immunity does not bar suit.  *Id.*

In evaluating a claim of qualified immunity, the Sixth Circuit directs that a district court undertake two inquiries, in no particular order.  First, a court

16

determines whether the facts alleged make out a violation of a constitutional right. *Id.* (citing *Martin*, 712 F.3d at 957). Second, the court asks if the right at issue was clearly established at the time such that a reasonable person would know that his conduct violated that right. *Id.* A plaintiff must satisfy each of these steps for his claim to proceed. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Under the law of this Circuit, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Although insubstantial claims should be decided at the earliest stage of litigation possible, that point usually arises at summary judgment. *Id.* 433–34.

### II.D.1.  Clearly Established Right

The Fourteenth Amendment's Due Process Clause "restricts the activities of the states and their instrumentalities[.]" *Scott*, 205 F.3d at 873 n.8. It provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff alleges that Defendants' deliberate indifference to Mr. Kiekisz's medical needs violated his rights to due process of law and equal protection under the Fourteenth Amendment. (ECF No. 47, ¶ 243, PageID #586.) The Fourteenth Amendment protects the right of pretrial detainees to receive necessary medical care that they otherwise cannot seek out because they are detained. *Owensby v. City of Cincinnati*, 385 F. Supp. 2d 626, 654 (S.D. Ohio 2004) (collecting cases). Any argument that Mr. Kiekisz did not have a clearly established right under the Fourteenth Amendment to receive medical care lacks merit where Mr. Kiekisz allegedly received no medical care at all, despite alerting jail officials to

17

a history of suicidal thoughts and attempts and informing officials that he takes prescribed medications for his mental health.  Without question, this right was clearly established at the time of the events at issue.

### II.D.2.  Alleged Facts as to Medical Care

"Deliberate indifference to the serious medical needs of pretrial detainees normally constitutes a substantive due process violation." *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) (cleaned up).  "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." *Id.* (quoting *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005)).  As discussed above (*supra* Part II.B.), the amended complaint fails to allege that Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell knew of and disregarded Mr. Kiekisz's need for medical care.  On the facts as alleged, these individual Defendants are entitled to qualified immunity on Count 9.

### II.E.  Supplemental Jurisdiction Over State Law Claims

Plaintiff raises Counts 3–4, 6–7, and 11 against all Defendants under State law.  Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell argue that the Court lacks pendent jurisdiction over the State law claims in the event the federal claims against them are dismissed, which is the case.  A court may exercise supplemental jurisdiction over related claims that "form part of the same case or controversy" as any claim over which the court has original jurisdiction.  28 U.S.C. § 1367(a).  Further, Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State

18

law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In deciding whether to exercise supplemental jurisdiction, the district court should consider factors such as "comity, judicial economy, convenience, and fairness." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620–21 (6th Cir. 1999).

After reviewing the record in this matter, the Court will not exercise its discretion to decline supplemental jurisdiction over Plaintiff's State law claims against Defendants Lagreca, Beawin-Monah, Zitiello, and Parnell. Although the federal claims against those individuals are dismissed, other federal claims remain against several other Defendants, including Dr. Tallman and Nurse Trovato. Further, the State claims involve the same set of facts and circumstances as the remaining federal claims such that there is one case or controversy between the parties. And the State law claims do not raise novel issues of State law, and no other exceptional circumstances exist. Moreover, the same State law claims against the individual Nurses are also raised against all other Defendants, alleviating any concern that exercising jurisdiction over the claims against the Nurses will result in jury confusion or multiple trials. Retaining jurisdiction over the State law claims best serves the ends of judicial economy and the convenience of the parties by resolving all claims comprising the same case or controversy and avoiding piecemeal litigation.

### II.F.   Immunity Under State Law

In the event the Court elects to exercise jurisdiction over the State law claims, which it does, Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell argue the State law claims against them fail as a matter of law because they are entitled to immunity under Chapter 2744 of the Ohio Revised Code.   (ECF No. 53, PageID #758.) Section 2744.02 grants immunity to political subdivisions "in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code. § 2744.02(A)(1).   Employees of a political subdivision are immune from civil liability under Section 2744.03(A) unless:  (1) "The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;" (2) "The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) "Civil liability is expressly imposed upon the employee" by statute. Ohio Rev. Code § 2744.03(A)(6).

Relevant to the second exception, "[w]anton misconduct is the failure to exercise any care toward those to whom duty of care is owed in circumstances in which there is a great probability that harm will result." *Ruffin*, 2017 WL 2832674, at *14 (citation omitted).  Malice is "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified."  *Id.* (citation omitted).  "Bad faith connotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *McCormick v.*

*Flaugher*, 5th Dist. Richland No. 2019 CA 0094, 2020-Ohio-2686, ¶ 30 (Ohio Ct. App.) (citation omitted).   Finally, reckless conduct is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Ruffin*, 2017 WL 2832674, at *14 (citation omitted).

Operating a jail and providing health care services in a county jail are governmental functions that qualify Cuyahoga County and MetroHealth as political subdivisions entitled to statutory immunity. *Ruffin*, 2017 WL 2832674, at *13 (citing Ohio Rev. Code §§ 2744.01(C)(2)(h) & (x)).  As employees of either Cuyahoga County or MetroHealth (ECF No. 47, ¶ 18, PageID #523), Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell are immune from liability for Plaintiff's State-law claims unless one of the circumstances set forth in Section 2744.03(A)(6) applies.

Plaintiff alleges that these individuals "acted within the scope of their employment and acted under the color of law" at "all times relevant to this case" (*id.*), which eliminates the first exception.  Given that the Nurses are barely mentioned in the first amended complaint and that there are no plausible allegations they interacted with Mr. Kiekisz or knew about his condition, Plaintiff cannot show they acted with malice, in bad faith, or in a wanton or reckless manner.  Accordingly, the second exception also does not apply.  As for the third, liability is not expressly imposed by Ohio law in this circumstance and it, too, does not apply.  Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell are, therefore, entitled to statutory immunity on Plaintiff's State-law claims.

### II.G.  Willful, Wanton, Reckless, Malicious and Bad Faith Conduct

Finally, Defendants argue that Plaintiff's claim for willful, wanton, reckless, malicious, and bad faith conduct (Count 3) should be dismissed because it is an element of other causes of action rather than a distinct cause of action. ([ECF No. 53](), PageID #762.)  Defendants are correct, and Plaintiff's third claim is dismissed. *See, e.g.*, *Bickerstaff v. Lucarelli*, No. 1:14CV831, 2015 WL 1523990, at *5 (N.D. Ohio Apr. 2, 2015) (citing *Bradley v. City of Cleveland*, No. 1:11CV781, 2012 WL 775106, at *3 (N.D. Ohio Mar. 7, 2012).

### CONCLUSION

 For the foregoing reasons, the Court **GRANTS** Defendant Mills' motion for judgment on the pleadings ([ECF No. 52]()).  The individual-capacity claims against Mr. Mills are dismissed.  In addition, the claim against him for civil liability for criminal acts (Count 13) is dismissed against Mr. Mills entirely.

Further, the Court **GRANTS** partial judgment on the pleadings to Dr. Tallman and Nurses Lagreca, Beawin-Monah, Zitiello, Parnell, and Trovato ([ECF No. 53]()). Counts 1 and 9 are dismissed against Nurses Lagreca, Beawin-Monah, Zitiello, and Parnell.  The official capacity claims against Dr. Tallman and Nurses Lagreca, Beawin-Monah, Zitiello, Parnell, and Trovato are dismissed as duplicative of Plaintiff's claims against Cuyahoga County and MetroHealth.  Count 3 is dismissed against the moving Defendants.

### SO ORDERED.

Dated:  November 9, 2021

_____
       J. Philip Calabrese
       United States District Judge
       Northern District of Ohio